UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALFRED CRAVEN, ET AL., on behalf of
mother Joan Henry,
              Plaintiff,

              v.                                          CIVIL ACTION NO.
                                                          12-12064-JCB

BOSTON HEALTH NET INSURANCE CO.,
ET AL.,
              Defendants.

MEMORANDUM AND ORDER

BOAL, M.J.

BACKGROUND

        On November 2, 2012, Plaintiffs Alfred Craven, a prisoner at FMC Devens, and his

brother, James Craven, of Wilmington, Vermont,[1] filed a civil action on behalf of their mother,

Joan Henry ("Joan").  Plaintiffs identify the Defendants as Boston Health Net Insurance Co.

("BHN") and other unknown and unnamed defendants (staff of BHN), located in Boston,

Massachusetts.  In the body of the Complaint, however, Plaintiffs name Dr. McNamee as a

Defendant as well.  Plaintiffs purport to bring this action for civil rights violations pursuant to 42

U.S.C. § 1983, for the alleged deliberate indifference to their mother's urgent medical needs,

resulting in Joan's death from liver cancer.

        Specifically, Plaintiffs claim that on or about June 6, 2012, Dr. McNamee made a request

to BHN for a PET Scan for Joan, following surgery on February 21, 2012 for lung cancer.  BHN

denied two earlier requests for PET Scans, but on August 10, 2012, after three appeals to the

Contract Administrator, BNH granted the request.  With respect to Dr. McNamee, Plaintiffs

contend that he waited too long to detect Joan's cancer, and was negligent in failing to order a

_____

        [1]James Craven has not stated his current mailing address.  Based on attachments to the
Complaint, it appears he resides in Wilmington, VT.

blood test or other test that would have detected cancer sooner.  Further, they contend that Dr. McNamee told Joan that her cancer was not life threatening and that she could wait a week to discuss her options; however, Dr. Kalva, a liver specialist, advised Joan that her cancer was discovered too late to save her life.

With respect to BHN, Plaintiffs claim that it was grossly negligent because it waited too long to approve insurance coverage for a PET Scan, and there were no reasonable grounds to deny coverage.  Plaintiffs also claim that it (and Dr. McNamee) should have known Joan's medical history of cancer treatment and surgery, and should have known that urgent medical follow-up was necessary to determine if the cancer had reappeared.  They also claim that the supervisor at BHN, and other unnamed staff, caused Joan to suffer pain.  They allege the Defendants' inactions constituted cruel and unusual punishment under the Eighth Amendment. They also allege the conduct of the Defendants involved gross negligence, discrimination, deliberate indifference, and malpractice.  Plaintiffs seek monetary damages.

Plaintiffs attached to the Complaint an Affidavit of Joan detailing her battle with cancer, dated October 12, 2012.  They also attached various medical reports and test results, and a document titled as a motion, but actually presenting further arguments in support of Plaintiffs' claims.

In addition to filing the Complaint and exhibits, Plaintiffs filed a Motion for Appointment of Pro Bono Counsel (Docket No. 2) alleging counsel is needed in order to protect civil rights.[2]

Plaintiffs failed to pay the $350.00 filing fee for civil actions, or to seek a waiver of the

---

[2]Plaintiffs erroneously seek appointment of counsel under the Criminal Justice Act, 18 U.S.C. § 3006A.  This statute does not provide for appointment of *pro bono* counsel and does not apply to civil actions such as the type presented here.  Rather, the District Court has a separate Pro Bono Plan for appointment of *pro bono* counsel in civil cases.

filing fee due to indigency.

DISCUSSION

I.    The Filing Fee

A party (or parties) bringing a civil action must either (1) pay the $350.00 filing fee,

see 28 U.S.C. § 1914(a); or (2) seek leave to proceed without prepayment of the filing fee, see 28

U.S.C. § 1915 (proceedings *in forma pauperis*).  Where, as here, Plaintiff Alfred Craven is a

prisoner (as defined by 28 U.S.C. § 1915(h)), a motion for waiver of prepayment of the filing fee

must be accompanied by "a certified copy of the trust fund account statement (or institutional

equivalent) for the prisoner for the 6-month period immediately preceding the filing of the

complaint ... obtained from the appropriate official of each prison at which the prisoner is or was

confined."  28 U.S.C. § 1915(a)(2).[3]

In this District, it is the practice to apportion the filing fee between or among plaintiffs,

because only one filing fee of $350.00 may be collected.  Here, Alfred Craven would be

responsible for paying $175.00, and James Craven would be responsible for paying $175.00.

In light of the above, Alfred Craven is directed either to pay his proportionate share of

the filing fee within 21 days of this Memorandum and Order or in the alternative, file an

application to proceed *in forma pauperis* accompanied by his certified prison account statement.

---

[3]Unlike other civil litigants, prisoner plaintiffs are not entitled to a complete waiver of the
$350.00 filing fee, notwithstanding the grant of *in forma pauperis* status.  Based on the
information contained in the prison account statement, the Court will direct the appropriate
prison official to withdraw an initial partial payment from the plaintiff's account, followed by
payments on a monthly basis until the entire filing fee obligation is paid in full.  See 28 U.S.C.
§ 1915(b)(1)-(2).  Even if the action is dismissed upon a preliminary screening, see 28 U.S.C.
§§ 1915(e)(2), 1915A, the plaintiff remains obligated to pay the fee, see McGore v.
Wrigglesworth, 114 F.3d 601, 607 (6th Cir. 1997) (§ 1915(b)(1) compels the payment of the fee
at the moment the complaint is filed).

Additionally, James Craven is directed either to pay his proportionate share of the filing fee within 21 days or file an application to proceed *in forma pauperis*. Failure to comply with this directive may result in the dismissal of claims.[4]

The Clerk shall also send a copy of this Memorandum and Order to the Treasurer's Office at FMC Devens in order to facilitate any request by Alfred Craven for a certified prison account statement. The Court requests that the Treasurer's Office include in any prison account statement Alfred Craven's average monthly deposits for the six-month period preceding the date the Complaint was filed, as well as the average monthly balance for that same period.

II.    Failure of James Craven to Sign Complaint

Notwithstanding the above, this Court notes that James Craven has not signed the Complaint as required by Rule 11(a) of the Federal Rules of Civil Procedure. See Fed. R.Civ. P. 11(a). Under Rule 11(a), a court may strike an unsigned paper unless the omission is promptly corrected after being called to the party's attention. Id.

Accordingly, unless James Craven signs an Amended Complaint pursuant to this Memorandum and Order, all claims asserted by him will be dismissed.[5]

III.    Screening of the Complaint

Because Alfred Craven is a prisoner, he is subject to the provisions of the Prison Litigation Reform Act. The Prison Litigation Reform Act of 1995 ("PLRA"), Title VIII of Pub.L. 104-134, 110 Stat. 1321-1375 (1996), enacted several provisions which grant the court

---

[4]For the convenience of litigants, this Court provides a form application to seek leave to proceed *in forma pauperis*. The Clerk shall provide Plaintiffs with standard applications.

[5]If this action or any claims are subject to dismissal, the case may be assigned to a District Judge for further proceedings.

the authority to screen and dismiss prisoner complaints.  See 28 U.S.C. § 1915 (proceedings *in forma pauperis)*; 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).[6]

Here, the Plaintiffs have not yet been allowed to proceed *in forma pauperis* and therefore the screening of the Complaint under 28 U.S.C. § 1915(e) is not authorized.  Moreover, because it does not appear that the Defendants are governmental entities, no preliminary screening is authorized under 28 U.S.C. § 1915A.  Nevertheless, this Court has inherent authority to manage its own cases and to review a case to determine, among other things, whether or not it is frivolous as that term is used in legal parlance.  See Bustos v. Chamberlain, 2009 WL 2782238, *2 (D.S.C. 2009) (noting that the court has inherent authority "to ensure a plaintiff has standing, that subject matter jurisdiction exists, and that a case is not frivolous") citing, *inter alia*, Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 307-308 (1989); Pillay v. INS, 45 F.3d 14, 16-17 (2d Cir. 1995) (where a § 1915 screening was not applicable because a *pro se* party paid the filing fee, the Court still had inherent authority "wholly aside from any statutory warrant" to act *sua sponte*); and Rolle v. Berkowitz, 2004 WL 287678, *1 (S.D.N.Y. 2004) (*sua sponte* dismissal in fee-paying pro se case is warranted where the claims presented no arguably meritorious issue to consider).  See also Gaffney v. State Farm Fire and Cas. Co., 294 Fed. Appx. 975, 977 (5th Cir. 2008) (unpublished) ("This court has on numerous occasions recognized the inherent authority of a district court to dismiss a complaint on its own

---

[6]Section 1915A authorizes the Court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A.

motion for failure to state a claim.").

In addition to the statutory screening provisions and the inherent authority of the Court to manage its cases, this Court has an independent obligation to inquire, *sua sponte*, into its subject matter jurisdiction.  See McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004);  Fed. R. Civ. P. 12(h)(3) ("If the court determines ... it lacks subject matter jurisdiction, the court must dismiss the action.").  See also In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988) ("It is too elementary to warrant citation of authority that a court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting.").

In connection with the preliminary screening conducted here, the Plaintiffs' Complaint is construed generously because they are proceeding *pro se*.  Hughes v. Rowe, 449 U.S. 5, 9 (1980);  Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000).  However, even under a broad reading, the claims presented in this action are subject to dismissal for the reasons set forth below.

A.      Lack of *Respondeat Superior* Liability of BNH or Its Unnamed Supervisor

Plaintiffs seek to hold BNH and its Supervisor liable for civil rights violations presumably based on actions or inactions of its employees.  Their constitutional claims are not plausible, however, because there is no vicarious liability (*i.e.*, no *respondeat superior* liability) for claims arising under 42 U.S.C. § 1983.[7]  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  "It

_____

[7]Section 1983 of Title 42 creates a cause of action for persons who are denied a federally protected right by a person acting under color of state law.  See, e.g., Baker v. McCollan, 443 U.S. 137 (1979) (constitutional deprivations); Maine v. Thiboutot, 448 U.S. 1 (1980) (statutory deprivations).  "Section 1983 'is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.'"  Felton v. Lincoln, 429 F. Supp. 2d 226, 238 (D. Mass. 2006) (quoting Graham v. Connor, 490 U.S. 386, 393-94 (1989)); 42 U.S.C.A. § 1983.  "It is well established that 'a litigant complaining of a violation of a

is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983.  Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)).  Accordingly, to the extent Plaintiffs seek to hold BNH and its Supervisor liable for the civil rights violations of its employees, such claims would fail.

      B.      Failure to State Plausible Claims in Compliance With Fed. R. Civ. P. 8

Next, to the extent that Plaintiffs seeks to hold liable any unnamed individual employees of BNH, they fail to state plausible claims in accordance with Rule 8 of the Federal Rules of Civil Procedure.  Rule 8(a) requires a plaintiff to include in the complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original)(quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005).  It must afford the defendant(s) a "['meaningful opportunity to mount a defense,'"  Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)).  See also Redondo-Borges v. U.S. Dept. of Housing and Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005).  "In a civil rights action as in any other action ...., the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why."  Educadores Puertorriqueños en

_____

constitutional right does not have a direct cause of action under the United States Constitution but [rather] must utilize 42 U.S.C. § 1983.'"  Wilson v. Moreau, 440 F. Supp. 2d 81, 92 (D.R.I. 2006) (alteration in original) (quoting Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001)).

Acción v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004).  Although "the requirements of Rule

8(a)(2) are minimal . . .[,] 'minimal requirements are not tantamount to nonexistent

requirements.'"  Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).

        Here, apart from alleging that unspecified BNH employees were negligent, the Complaint

fails to set forth the necessary "who did what to whom, when, where, and why" that would

provide the Defendants with sufficient notice of the constitutional and/or negligence claims.

Moreover, by pleading in the manner they have, *i.e.*, collectively asserting claims against the

Defendants, Plaintiffs have failed to meet Rule 8 pleading requirements.  See Bagheri v.

Galligan, 160 Fed. Appx. 4, 5, 2005 WL 3536555, *1 (1st Cir. 2005) (unpublished) (finding

complaint deficient because, *inter alia*, it failed to state clearly which defendant or defendants

committed each of the alleged wrongful acts; "[the district court's requirement of an amended

complaint] to remedy this deficiency did not demand more than the minimum necessary to

satisfy notice pleading standards.").  See also Atuahene v. City of Hartford, 10 Fed. Appx. 33,

*34, 2001 WL 604902, *1 (2d Cir. 2001) (unpublished) ("By lumping all the defendants together

in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint

failed to satisfy this minimum standard....").[8]

---

        [8]"District courts are not required to conjure up questions never squarely presented to
them or to construct full blown claims from sentence fragments."  Terrance v. Cuyahoga County,
2005 WL 2491531 at *1 (N.D. Ohio 2005) citing Beaudett v. City of Hampton, 775 F.2d 1274,
1278 (4th Cir. 1985).  See McDonald v. Hall, 610 F.2d 16 (1st Cir. 1979) (court is not required
to "conjure up unpled allegations," notwithstanding duty to be less stringent with *pro se*
complaints).  Such an exercise  would "require ... [the courts] to explore exhaustively all
potential claims of a *pro se* plaintiff, ... [and] would ... transform the district court from its
legitimate advisory role to the improper role of an advocate seeking out the strongest arguments
and most successful strategies for a party."  Terrance, 2005 WL 2491531, at *1, quoting
Beaudett, 775 F.2d at 1278.  See also Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989) ("It is
certainly reasonable to ask that all plaintiffs, even *pro se* plaintiffs,.... alert party defendants that

Moreover, with respect to their Eighth Amendment claims under § 1983 for deliberate indifference to Joan's serious medical need, the Plaintiffs fail to set forth underlying facts to state plausible claims upon which relief may be granted.  In order to state a § 1983 claim, a plaintiff must allege: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.  Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 998 (1st Cir. 1992); Velez-Rivera, 437 F.3d at 151-52.

At the outset, Plaintiffs fail meet the first element noted above, because there are no underlying facts set forth that would denote state action by any Defendant.  Rather, it appears that Dr. McNamee is a private physician, and that BNH is a private, for-profit company.  Thus, their constitutional claims fail at the outset.[9]

_____

they may be individually responsible in damages.  The trial and appellate courts should not have to guess at the nature of the claim asserted.").

[9]It is "[o]nly in rare circumstances" that private parties can be viewed as state actors.  Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005) (quoting Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992)).  The First Circuit employs a three-part test to determine whether a private party can be characterized as a state actor: the state compulsion test, the nexus/joint action test, and the public function test.  Id. at 5 citing Rockwell v. Cape Cod Hospital, 26 F.3d 254, 257 (1st Cir. 1994) and Perkins v. Londonderry Basketball Club, 196 F.3d 13, 18-21 (1st Cir.1999).  "Under the state compulsion test a private party is fairly characterized as a state actor when the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'"  Estades-Negroni, 412 F.3d at 5 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).  Under the nexus/joint action test, a private party can be characterized as a state actor "where an examination of the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity].'"  Id. (quoting Bass v. Parkwood Hospital, 180 F.3d 234, 242 (5th Cir. 1999)).  Finally, under the public function test, a private party can be characterized as a state actor "if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been 'traditionally the exclusive prerogative of the State.'"  Id. (quoting Blum, 457 U.S. at 1005).  Here, there is nothing

Additionally, Plaintiffs' assertion of Eighth Amendment violations and their assertion of cruel and unusual punishment because of the pain Joan suffered are not cognizable.  The Eighth Amendment imposes a duty to attend to the "serious medical needs of prisoners."  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  Because Joan was not a prisoner, the Eighth Amendment simply does not apply.  See, e.g., Montes v. Ponce Municipality, 79 Fed. Appx. 448, 450, 2003 WL 22461540, *2 (1st Cir. 2003) (unpublished) (noting that since pretrial detainees technically were not being "punished," the Eighth Amendment did not apply; rather, for non-prisoners, the liberty component of the Fourteenth Amendment's Due Process Clause applied).

Even assuming that the same or similar standards for due process claims were applied in this case, Plaintiffs still fail to set forth plausible due process claims.  The First Circuit has stated that "[d]eliberate indifference is conduct that offends evolving standards of decency in a civilized society."  DesRosiers v. Moran, 949 F.2d 15, 18 (1st Cir. 1991).  It is more than mere negligence; it requires that a defendant have a "culpable state of mind and intended wantonly to inflict pain."  Id. at 19.  Here, Plaintiffs allege that the Defendants' actions or inactions constituted negligence, gross negligence, malfeasance, and medical malpractice.  Despite Plaintiffs' contention that this negligent conduct amounts to deliberate indifference, their arguments are misplaced.  In legal effect, all of these assertions denote a state of mind less than that required to set forth constitutional deliberate indifference/denial of due process claims. There is no indication of any intention of any Defendant to wantonly inflict pain.  Simply put, Plaintiffs' allegations amount to nothing more than state law claims based on negligence, medical malpractice, and wrongful death.  See Mass. Gen. Laws ch. 229, § 2 (Wrongful death;

---

alleged that suggests the Defendants' actions fall within any of these three categories.

damages).[10]  They do not present federal civil rights claims.

 C. <u>Wrongful Death Claims Cannot Be Raised By Plaintiffs</u>

 In addition to the legal impediments discussed above, this Court notes that under the Massachusetts law of wrongful death, only the executor/trix or administrator/trix may bring a wrongful death action.  <u>See</u> Mass. Gen. Laws ch. 229, § 2 (providing that "[d]amages under this section shall be recovered in an action of tort by the executor or administrator of the deceased").  "The wrongful death statute provides for a single action brought by the decedent's executor or administrator.  The executor or administrator presents all claims by the designated beneficiaries for damages flowing from the wrongful death."  <u>Hallett v. Town of Wrentham</u>, 398 Mass. 550, 555, 499 N.E.2d 1189, 1192 (Mass. 1986) (citing <u>Gaudette v. Webb</u>, 362 Mass. 60, 72, 284 N.E.2d 222 (Mass. 1972) for the proposition that the "administratrix ... acts merely as a representative or conduit for the children's recovery"); <u>see</u> <u>Anagnos v. Hultgren</u>, 445 F. Supp. 2d 184, 190 (D. Mass. 2006) (stating that actions for wrongful death against a municipality must be brought by the executor or administrator of the decedent).

 Here, neither Plaintiff has alleged that he is the authorized Executor or Administrator of the Estate of Joan Henry.  Thus, any claim for wrongful death is not cognizable in this Court.


 D. <u>Plaintiffs May Not Represent the Estate of Joan Henry as *Pro Se* Litigants</u>

 Even if Plaintiffs were the Co-Executors or Administrators of Joan's estate, they may not

---

[10]This state statute imposes liability on a person who, among other things, negligently causes the death of another person.  "The statute largely incorporates common law tort principles."  <u>Davis v. United States</u>, 670 F.3d 48, 53 (1st Cir. 2012) <u>citing</u> <u>Matsuyama v. Birnbaum</u>, 452 Mass. 1, 890 N.E.2d 819, 836–38 (2008).

bring this wrongful death action in their *pro se* capacity.  Rather, the action must be filed by an

attorney who is duly-licensed to appear in this Court.

A plaintiff's capacity to bring suit for wrongful death "is generally controlled by state

law governing survivorship and wrongful death actions."  <u>Nordberg v. Town of Charlton</u>,  2012

WL 2990763 at *3 (D. Mass. Jul. 19, 2012) (Saylor, J.).  As District Judge Saylor of this Court

recently has stated:

> Capacity to bring an action for wrongful death is similarly limited by a
> requirement that "the 'executor or administrator of the deceased,' rather than any
> beneficiary of the estate as such, act as the plaintiff in a wrongful death action
> brought on behalf of the designated categories of beneficiaries."  <u>Marco v. Green</u>,
> 415 Mass. 732, 735–36, 615 N.E.2d 928 (1993).  <u>See</u> Mass. Gen. Laws ch. 229, §
> 2. Thus, even the legal beneficiary of a wrongful death action may not assert that
> claim in his or her individual capacity.  <u>See</u> <u>Bennett v. United States</u>, 389 F. Supp.
> 2d 121, 124 (D. Mass. 2005).
>
> * * *
>
> Survival and wrongful death actions are especially problematic when they are pursued
> *pro se*.  By law, there are only two ways which an individual may appear in federal court:
> either personally, or by counsel.  28 U.S.C. § 1654.  Accordingly, "an individual who is
> not an attorney admitted to practice before this court is not authorized to submit
> pleadings (including a complaint) or in any other manner appear on behalf of another
> person or entity."  <u>Matthews v. Cordeiro</u>, 144 F. Supp. 2d 37, 38 (D. Mass. 2001); <u>see</u>
> <u>also</u> <u>Herrera–Venegas v. Sanchez–Rivera</u>, 681 F.2d 41 (1st Cir. 1982).  Under Local Rule
> 83.5.3(c), "a person who is not a member of the bar of this court ... will be allowed to
> appear and practice before the court *only* in *his own* behalf."  (emphasis added).  **The
> estate of a decedent is a separate legal entity from an individual plaintiff.  Thus,
> even if a plaintiff is the executor of an estate or is otherwise authorized to pursue a
> decedent's legal claim, he may not do so** *pro se.*

<u>Nordberg</u>,  2012 WL 2990763 at *4 (emphasis in bold added); <u>see also</u> <u>Cohen v. Attorney</u>

<u>General of Massachusetts</u>, 2011 WL 5008088, at * 7 (D. Mass. 2011) ("Notwithstanding that

[plaintiff] may have authority to act based on her appointment as Administratrix, that is not

sufficient to permit her to represent the interest of the Estate, where she is not a duly-licensed

attorney admitted to practice in this Court"); <u>cf.</u> <u>Pridgen v. Anderson</u>, 113 F.3d 391, 393 (2d Cir.

1997) (holding that "an administratrix or executrix of an estate may not proceed pro se when the

estate has beneficiaries or creditors other than the litigant.").

Without further information as to the Plaintiffs' legal status vis-a-vis the Estate, and

without further information whether there are any other beneficiaries or creditors other than

Plaintiffs, this Court presumes that Plaintiffs may not proceed with a wrongful death claim unless

the claim is brought by duly-licensed counsel acting on behalf of the Estate.

E.       <u>Plaintiff Alfred Craven May Not Pursue Claims on Behalf of His Brother James</u>

Similarly, it appears that Alfred Craven also is seeking to assert claims of his brother

James (since James has not signed the Complaint).  As a non-attorney, he may not do so.  <u>See</u>

Local Rule 83.5.3(c).

IV.    <u>Lack of Subject Matter Jurisdiction</u>

In addition, this Court is not satisfied that Plaintiffs have set forth any claims sufficient to

invoke the subject matter jurisdiction of this Court.  In order to proceed with this action in federal

court, Plaintiffs must demonstrate that there is either: (1) federal question jurisdiction; or (2)

diversity jurisdiction.  <u>See</u> 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1332

(diversity jurisdiction).  As detailed below, Plaintiffs have not set forth either basis.

A.       <u>No Federal Bona Fide Federal Question Presented</u>

Federal district courts have original jurisdiction over "federal question" cases.  A federal

question "aris[es] under the Constitution, laws, or treaties of the United States."  28 U.S.C.

§ 1331; <u>Viqueira v. First Bank</u>, 140 F.3d 12, 17 (1st Cir. 1998).  A claim arises under federal law

within the meaning of § 1331 if a federal cause of action emerges from the face of a well-pleaded

complaint.  See City of Chicago v. International College of Surgeons, 522 U.S. 156, 163 (1997).

The well-pleaded complaint rule generally restricts the exercise of federal question jurisdiction to

instances in which a federal claim is made manifest within the four corners of a plaintiff's

complaint.  Viqueira, 140 F.3d at 17.

In this case, as noted above, although Plaintiffs couch their claims in terms of civil rights

violations under § 1983, the Court finds that, as pled, no *bona fide* federal civil rights claim is

presented within the four corners of the Complaint; only state law claims for negligence,

malpractice, and wrongful death reasonably can be construed to be presented.  Thus, there is no

*bona fide* basis for the assertion of  jurisdiction based on § 1331 (federal question).

Absent an independent basis for federal question subject matter jurisdiction, this Court

would decline to exercise its discretion to invoke supplemental jurisdiction over the state law

claims.  Under 28 U.S.C. § 1367, a "district court may decline to exercise supplemental

jurisdiction" if "the district court has dismissed all claims under which it has original

jurisdiction."  28 U.S.C. § 1367(c)); see Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375

F.3d 99, 104-105 (1st Cir. 2004); Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st

Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at

the early stages of a suit, well before the commencement of trial, will trigger the dismissal

without prejudice of any supplemental state-law claims.").

B.      No Diversity Jurisdiction

Next, in addition to federal question jurisdiction, district courts have original jurisdiction

over civil actions between citizens of different states where the amount in controversy exceeds

$75,000.00.  28 U.S.C. § 1332(a).  Diversity must be complete: the citizenship of each plaintiff

14

must be shown to be diverse from that of each defendant.  <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365, 373-74 (1978).

In this case, Alfred Craven, as a prisoner in custody in Ayer, Massachusetts, is, absent any other evidence to the contrary, presumed to be a citizen of Massachusetts for purposes of the diversity analysis.  The Defendant BNH is alleged to be located in Boston, Massachusetts, and thus it, and its employees, also are presumed to be citizens of Massachusetts for this analysis. Thus, on this record, it appears that at least one Plaintiff and one Defendant are citizens of the same state, and therefore complete diversity is destroyed.  In short, there is nothing in the Complaint from which this Court could reasonably infer diversity of citizenship exists so that this Court could entertain Plaintiffs' state law claims under 28 U.S.C. § 1332.

In light of the above, in addition to the legal impediments subjecting this action to dismissal for failure to state a claim upon which relief may be granted, this action also is subject to dismissal for lack of jurisdiction.

V.    <u>Declination to Appoint *Pro Bono* Counsel</u>

Plaintiffs seek appointment of *pro bono* counsel to protect civil rights.  The decision to appoint counsel is discretionary, and a plaintiff does not have a constitutional or statutory right to appointed counsel.  <u>Dellenbach v. Hanks</u>, 76 F.3d 820, 823 (7th Cir. 1996) <u>cert</u>. <u>denied</u>, 519 U.S. 894 (1996).  In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that the denial of counsel will result in a fundamental unfairness impinging on the party's due process rights.  <u>See</u> <u>DesRosiers</u>, 949 F. 2d at 23.  <u>See</u> <u>also</u> <u>Manisy v. Maloney</u>, 283 F. Supp. 2d. 307, 317 (D. Mass. 2003).   Here, Plaintiffs have not demonstrated through financial disclosures that they are indigent and unable to afford to retain

counsel on their own.  Moreover, even if Plaintiffs may not be able to afford counsel at a set fee, they have not shown that counsel could not be secured on a contingency fee basis.

More importantly, however, for all the reasons set forth above outlining the numerous legal impediments to this action, this Court finds that, at least as pled, the likelihood of success on the merits is highly questionable.  Therefore, this is not the type of case that warrants the expenditure of the scarce *pro bono* resources of the District Court.  Accordingly, the Plaintiffs' Motion for Appointment of Pro Bono Counsel (Docket No. 2) is <u>DENIED</u>.

VI.    <u>Order to Show Cause and File an Amended Complaint</u>

In light of the above, the Court will recommend that the action be dismissed unless, within 42 days of the date of this Memorandum and Order, Plaintiffs demonstrate good cause in writing why the claims should not be dismissed.  In filing a show cause response, Plaintiffs should not reiterate their claims; rather, they should address the legal impediments discussed above (*i.e.*, lack of *respondeat superior* liability, failure to comply with Rule 8, failure to set forth state action by the Defendants, inability to proceed with wrongful death claims *pro se*, and lack of subject matter jurisdiction over this action).

Additionally, Plaintiffs must file, within the 42 day period, an Amended Complaint that comports with Rule 8 (setting forth plausible claims upon which relief may be granted) and demonstrating the subject matter jurisdiction of this Court.  Failure to comply with these directives will result in a dismissal of this action.

VII.    <u>Consent Pending</u>

This action was assigned to the undersigned pursuant to the Court's Program for Random

Assignment of Civil Cases to Magistrate Judges.  The Clerk shall send to Plaintiffs this

Memorandum and Order along with the standard consent package with information and

instructions so that they may choose whether or not to elect to proceed before a Magistrate Judge

for all purposes.  Within 35 days of the date of this Memorandum and Order, Plaintiffs shall

advise the Court whether or not they consent.  Should they elect not to consent, this Court will

direct the reassignment of this case to a District Judge for further proceedings.

<u>CONCLUSION</u>

Based on the foregoing, it is hereby Ordered that:

1.  Within 21 days of the date of this Memorandum and Order, Plaintiff Alfred Craven shall
    pay his proportionate share of the civil action filing fee or he shall file a Motion for Leave
    to Proceed *in forma pauperis* accompanied by his certified prison account statement for
    the six-month period preceding the filing of the Complaint;

2.  Within 21 days of the date of this Memorandum and Order, Plaintiff James Craven shall
    pay his proportionate share of the civil action filing fee or he shall file a Motion for Leave
    to Proceed *in forma pauperis;*

3.  Within 42 days of the date of this Memorandum and Order, Plaintiffs shall demonstrate
    good cause in writing why this action should not be dismissed for the reasons stated
    herein;

4.  Within 42 days of the date of this Memorandum and Order, Plaintiffs shall file an
    Amended Complaint, signed by both parties or their duly-licensed representative(s), that
    comports with Rule 8, setting forth plausible claims upon which relief may be granted,
    and setting forth the basis for this Court's subject matter jurisdiction;

5.  Plaintiffs' Motion for Appointment of Pro Bono Counsel (Docket No. 2) is <u>DENIED</u>;

6.  Plaintiffs may not represent the interests of others *pro se;* and

7.  Within 35 days of the date of this Memorandum and Order, Plaintiffs shall notify the
    Court in writing advising whether they consent or refuse to consent to proceed before a
    Magistrate Judge for all purposes.

SO ORDERED.


                                        /s/ Jennifer C. Boal
                                        JENNIFER C. BOAL
DATED:   December 6, 2012               UNITED STATES MAGISTRATE JUDGE